**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **REACHING HEARTS** | * | |
| **INTERNATIONAL, INC.,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No.: RWT 05cv1688 |
| v. | * | Case No.: RWT 11cv1959 |
| | * | |
| **PRINCE GEORGE'S COUNTY,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

This case is again before the Court because the Plaintiff, Reaching Hearts International, Inc. ("RHI"), after more than eight years of trying, still has been unable to obtain a fairly routine water and sewer service category change for its property located in Prince George's County that will permit it to build its new church structures. The latest installment in this struggle occurred on September 13, 2011, when the County Council for Prince George's County granted in part and denied in part RHI's most recent application for a water and sewer service category change.

On September 15, 2011, this Court ordered that the parties appear before it again for a hearing on October 20, 2011, to determine if the September 13, 2011, actions of the County Council complied with this Court's November 4, 2008, memorandum opinion and accompanying order.

For the reasons discussed below, the Court will vacate that portion of the County Council's September 13, 2011, action denying in part RHI's application and direct that it forthwith reconsider the partial denial in accordance with the provisions of this memorandum opinion and earlier orders of this Court.

I.      **Background**

The history of this case is well documented and need not be discussed again fully.  *See Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766 (D. Md. 2008), *aff'd* 368 F. App'x 370 (4th Cir. 2010).   On June 21, 2005, RHI filed a Complaint for Declaratory Judgment, Injunctive Relief, and Compensatory Damages in this Court.  Doc. No. 1.[1]  RHI alleged that the Defendants, Prince George's County and the County Council for Prince George's County (collectively the "County"), violated the Equal Protection clause of the Fourteenth Amendment of the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") 42 U.S.C. §§ 2000cc *et seq.* by denying RHI's two water and sewer service category change applications and also by enacting an ordinance, CB-83-2003, which reduced the permitted lot coverage of any non-residential building within 2,500 feet of a drinking water reservoir, thereby preventing RHI from building a church on the land it had purchased.  *Id.*

After denial of the County's Motion to Dismiss, the case proceeded through discovery in 2006.  A seven-day jury trial began on April 15, 2008.  On April 24, 2008, the jury returned a verdict in favor of RHI finding that the County's actions were motivated in part on the basis of religious discrimination.  Doc. No. 97.  The jury further concluded that the County's actions imposed a substantial burden on RHI's exercise of its religion.  *Id.*  A conditional award of damages in the amount of $3,714,822.36 was also made.  *Id.*

On November 4, 2008, this Court issued an extensive Memorandum Opinion and Order denying the County's Renewed Motion for Judgment as a Matter of Law and entering judgment in favor of RHI and against the County on the jury's conditional verdict ("2008 Opinion" and

---

[1] The document numbers in this Opinion refer to the documents listed in Case No. RWT-05-cv-1688 unless otherwise noted.

"2008 Order").  Doc. Nos. 118, 119.  The Court also declared CB-83-2003 unconstitutional as applied to RHI, enjoined the County from applying the provisions of CB-83-2003 to RHI's Prince George's County property, and ordered the County to "process *any* water and sewer category change *application* thereafter filed by the Plaintiff without reference to the provisions of CB-83-2003 and without delay or religious discrimination."  Doc. No. 119 (emphasis added).

On November 10, 2008, the County took an appeal to the Court of Appeals for the Fourth Circuit.  Doc. No. 120.  Following argument, the Fourth Circuit affirmed the judgment of this Court on March 3, 2010, and denied the County's subsequent motions for rehearing and rehearing *en banc.*  Doc. Nos. 137, 143.

On July 18, 2011, RHI filed a Motion for Order of Contempt against the County.  Doc. No. 165.  In support of its motion, RHI stated that it had, on August 13, 2010, filed an application for a water and sewer service category change with the Prince George's County's Department of Environmental Resources.  *Id.*  As was the case with all of RHI's prior applications, the application was recommended for approval, but ultimately denied by the County Council on July 12, 2011, for what appears to be the same environmental concerns rejected by the jury that heard this case, and again rejected by this Court in its 2008 Opinion.  *Id.* On July 22, 2011, this Court issued a Memorandum Opinion and Order directing the County to show cause why it should not be held in contempt and sanctioned for violating this Court's 2008 Order.  Doc. Nos. 167, 168.

On September 13, 2011, the County Council reconsidered its earlier denial, and granted a portion of RHI's application, while denying the balance.  The County alleged that this action was a "compromise" that complied with earlier orders of this Court.  On September 15, 2011, this Court directed supplemental briefing on the issue of whether the County Council's September 13

actions conformed with this Court's earlier orders, and the Court held a hearing on October 20, 2011 on this issue.

### a.   Water/Sewer Service Category Changes

This Court already has addressed the Maryland water and sewer plan and Prince George's County 2001 Water and Sewer Plan ("2001 Plan"), which remained in effect during the trial of this case.  *See Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 773-75.  On November 18, 2008, the Council adopted the 2008 Water and Sewer Plan ("2008 Plan"), which replaced the 2001 Plan.  The Maryland Department of the Environment approved the 2008 Plan on August 25, 2009.  The 2008 Plan's goals and objectives fall into three categories:  (1) "meet all regulatory requirements to ensure adequacy of the water and sewer system" (2) "support managed development in Prince George's County" and (3) "protect and enhance the environmental quality of Prince George's County through sound water and sewer planning." 2008 Plan at 1-2, 1-3.

The 2008 Plan parrots the 2001 Plan's explanation of the purpose of the water and sewer category change designations, as follows:

> The policy of linking water and sewer categories to stages of the development process assures that the water and sewer systems will expand appropriately to reach new development as it comes in line. Conversely, this system assures that when new developments are built, adequate water and sewer service will be available.

*Compare id.* at 2-4 *with* 2001 Plan at 2-3.  As discussed previously, "[t]he Plan refers only to categories 3 through 6, and it establishes "procedures to be followed to amend or redesignate property from one category to another."  *Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 773-74.

The 2008 Plan establishes category change polices and criteria that an applicant must "take into account." 2008 Plan at 2-6.  These include: (1) environmental factors, (2) economics

and general fiscal concerns, (3) planning, zoning, and subdivision requirements, (4) federal, state, regional, county, and municipal land use plans, and planning policies, (5) water and sewer facility plans, engineering constraints, and the availability of transmission and treatment capacity, and (6) the need to alleviate public health problems. *Id.* at 2-6 – 2-9.

Chapter 6 discusses the procedures for adopting and amending the plan. The County uses the Water and Sewer Plan Amendment cycles "to manage the rate of growth in the County" and "to ensure the adequacy of the infrastructure and the delivery of services in a staged manner." *Id.* at 6-1. Section 6.3.2 lists the redesignation criteria for legislative amendments. It mandates that "[i]n order for the County to approve a particular category change, the project must meet the policies and criteria listed in Section 2.1.4 of this plan." *Id.* at 6-4.

Section 2.1.4 also enumerates three category specific criteria that a project must meet. In order for a property to be redesignated as Category 4, an applicant must demonstrate: (1) "the project complies with applicable zoning requirements"; (2) "water and sewer service is adequate and available"; and (3) "the development proposal includes an adequate description." *Id.*

### b. RHI's Property and Water and Sewer Service Category Change Applications

The 17.08 acre property purchased by RHI in 2002, located at 6100 Brooklyn Bridge Road in Prince George's County is comprised of two Parcels: (1) Parcel 28 is the front parcel that consists of 7.04 acres and (2) Parcel 11 is the rear parcel that consists of 10.04 acres. Doc. No. 118 at 7. In the front parcel, the front 3.4 acres are in category 3 while the back 3.6 acres were in category 5 prior to the Council's most recent action. *Id.* at 7-8. Parcel 28 is entirely in category 5 for water and sewer. "After purchasing the property, RHI hired a land use law firm, civil engineers experienced in land development, and a construction company that specialized in church construction to develop a plan for the construction" of a church and school,

which RHI planned to build in phases. *Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 772. In order to develop its plan for a church, school, and other infrastructure, RHI prepared and submitted an application for a water and sewer service category change in 2003. *See id.* at 774-75. To date, RHI has applied for and submitted *four* separate and distinct applications in order to upgrade its property to the proper category. Every application has been denied entirely or in substantial part.

### i.  March 2003 Application

In March 2003 ("2003 Application") RHI applied for a water and sewer service category change for the 3.6 acres of Parcel 28 and all 10.04 acres of Parcel 11 from water and sewer category 5 to category 4. *See* CR-34-2003 Attach. A at 1. "The application requested one point of discharge for 15,000 gallons of water per day and one water withdrawal for 15,000 gallons per day." Compl. ¶ 28. RHI's development proposal included building "[a] one-story church building with a minimum floor area of 95,000 square feet, sanctuary seating capacity of 1,500 and expansion capacity for a future school." *Id.* As discussed in this Court's prior opinion, the County rejected the application in its entirety, and RHI filed for a Writ of Mandamus in the Circuit Court for Prince George's County seeking an order compelling approval for the application. *Reaching Hearts Int'l Inc.*, 584 F. Supp. 2d at 774-76. The Circuit Court ruled in favor of the County. *Id.* at 776. RHI appealed this decision to the Court of Special Appeals, which affirmed the Circuit Court's decision and the Court of Appeals denied a petition for a writ of certiorari. *Id.*

### ii.  Passage of CB-83-2003

While RHI's mandamus petition was pending in the state court system, RHI developed a modified plan to construct a church on only the front portion of Parcel 28, which contained the

3.4 acres already in water and sewer category 3.  *Id.*  This "revised plan was for a 750 seat church on 3.4 acres with 173 parking spaces.  The revised church plan was capable of being served by the existing public water and sewer system."  Compl. ¶ 39.  The Council, however, had passed CB-83-2003, which reduced the allowable net lot coverage for certain non-residential use properties in residential zones that were within 2,500 feet of a drinking reservoir.  *See Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 776.  CB-83-2003 thus prevented RHI from building a church on the front 3.4 acres of the front parcel because of the new lot coverage restriction.  *Id.* During the planning stages, RHI first learned that the County had passed CB-83-2003.  *Id.* The law "dramatically reduced the allowable net lot coverage for certain non-residential use properties in residential zones that were within 2,500 feet of a drinking water reservoir from 50% and 60% to 10% and 20%."  *Id.*[2]  "The effect of CB-83-2003 was that RHI's plan to build a church on the front 3.4 acres of the front parcel, which was in category 3, was no longer permissible because it would have exceeded the new 10% lot coverage restriction."  *Id.*

### iii.  November 2004 Subdivision Application

On November 4, 2004, RHI filed a subdivision application in order to combine the front and rear parcels of its property ("2004 Application") "that provided for construction on 1.7 acres, which was only 10% of the Property's entire 17 acres; specifically, it would locate a church building of 14,000 square feet over three stories with parking around it on the front parcel."  *Id.* at 778.[3]  The Prince George's County Planning Board denied RHI's subdivision application on April 7, 2005, citing the constraints of CB-83-2003.  *Id.*  The Planning Board "explained that the Property exceeded the 10% lot coverage restriction because a portion of the Property was still in

---

[2] For a full discussion of the drafting and enactment of the bill, *see Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 776.

[3] For a full discussion of the preparation for and determination of a subdivision application, *see id.* at 777-78.

water and sewer category 5, which the Board believed could not be used in the calculation of the percentage of coverage" based on the enactment of CB-83-2003.  *Id.*

On May 25, 2005, RHI filed a petition for judicial review of the denial of its subdivision application in the Circuit Court for Prince George's County.  *Id.*  The Circuit Court affirmed the denial.  *Id.*  RHI appealed to the Court of Special Appeals on May 19, 2006.  *Id.* at 778-79.  On February 15, 2007, the Court of Special Appeals affirmed the decision of the Circuit Court.  *See id.* at 779.

### iv.  July 2005 Application

In response to the denial of the 2004 Application, RHI submitted an application on July 9, 2005, seeking a water and sewer upgrade from category 5 to category 4 for the 3.6 acres of Parcel 28 and all 10.04 acres of Parcel 11 ("2005 Application").  *Id.*  The application was filed in response to the reasons given by the County for denying RHI's 2004 Application.  The development proposal that RHI included with the 2005 Application included a three story church encompassing 42,000 square feet of floor area with seating capacity of 730 and an expansion of that facility to include an elementary and middle school.  *See* CR-75-2005 Attach. A at 1.  The 2005 Application was denied for the same reasons that the 2003 Application was denied.  *See Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 779.

### v.  2008 Proposed Plan at Trial

During trial, RHI presented a proposed plan ("2008 Proposal") to provide an example to assist with the calculation of delay damages claimed by it.  The 2008 Proposal would have required a water and sewer service category change for the rear portion of Parcel 28.  *See* Pl.'s Trial Ex. 2, 6, 22; 4/15/08 Tr. 104-05, 117-19, 121.  Pastor Oxentenko testified that the plan "wouldn't be the scope of what we started out with, but it would work at this time." 4/15/08 Trial

Tr. 137. The "sketch plan" would "cover[] about 43 percent of [Parcel 28]." *Id.* at 60. The building would have a footprint of approximately 27,000 square feet with 285 parking spaces. *Id.* It would cover approximately "3.14 acres" of Parcel 28. *Id.* at 87. In order to complete this proposal, RHI would need a water and sewer service category change for the back portion of Parcel 28 that was still in category 5.

### vi. 2010 Application

After the Fourth Circuit affirmed the judgment of this Court on March 3, 2010, and denied the County's subsequent motions for rehearing and rehearing en banc, *see* Doc. Nos. 137, 143, RHI applied for a water and sewer service category change on August 13, 2010 ("2010 Application"). In its 2010 Application, designated CR-21-2011, RHI requested a water and sewer category change from category 5 to 4 for the 3.6 acres of Parcel 28 and all 10.04 acres of Parcel 11. RHI included a development proposal for a 72,000 square foot sanctuary building, which would include a future private school for 200 students and an attached 12,000 square foot gymnasium to accommodate an existing congregation of 900 individuals and future student enrollment of 200 for grades kindergarten through eight. *See* CR-21-2011 Attach. A. The main sanctuary building would contain "two levels and a basement with a building footprint of 28,000 square feet." Doc. No. 165 Ex. D at 2. The 2010 Application requested one point of discharge for 7,000 gallons of water per day and one water withdrawal for 7,000 gallons of water per day.

On June 23, 2011, the Transportation, Housing, and Environment Committee of the County Council held a hearing on CR-21-2011. On that date Councilwoman Mary Lehman read from a memorandum the reasons why she believed that the County Council should deny RHI's application. She maintained that (1) the property was located in an environmentally sensitive area, (2) the proposed building would threaten water quality and quantity, and (3) the church

property would not allow the County to maintain the character of the neighborhood.  *See* Doc. No. 165 Ex. 2.

This Court previously rejected these identical reasons for denials of RHI's earlier applications.  *See Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 774-79; *id.* at 787-90. Councilwoman Lehman also claimed that rejection of RHI's 2010 Application was appropriate because (1) RHI had previously stated in the Circuit Court for Prince George's County that the front portion of Parcel 28 was already in water and sewer category 3 and the entire construction project contemplated by RHI could be built there, (2) in 2005 the Circuit Court for Prince George's County upheld the Council's July 2003 denial of RHI's 2003 Application and (3) the 2010 Application regarded the same subject property as the 2005 Application, which the County denied.  *See* Doc. No. 165 Ex. 2.

The County Council initially denied RHI's 2010 Application on July 12, 2011. Doc. No. 165 at 5.  On September 13, 2011, after this Court entered its order of July 22, 2011, the County Council reconsidered its action of July 12, 2011.  During the meeting, Councilwoman Lehman "moved the Council to reconsider and grant RHI's 2010 application with respect to Parcel 28 only."  Doc. No. 200 at 3.  Councilwoman Lehman stated:

> It is the intention of this Council to grant the application consistent with and to the full extent ordered by the United States District Court for the District of Maryland in the November 4, 2008 memorandum opinion issued by the Honorable Roger W. Titus.  Pursuant to that order, the motion would grant the application in so far [sic] as the back portion of the front parcel, which measures approximately 3.6 acres, is upgraded and changed from category 5 to category 4.

> To the extent that this description of the property to be recategorized differs or conflicts with the description in the Court's order, this motion is amended to reflect completely and comply with the Court's description of the land as described in the Court's opinion.

*Id.*  The adopted motion granted a water and sewer service category change from category 5 to category 4 for the rear 3.6 acres of Parcel 28.  On September 15, 2011, this Court directed supplemental briefing on the issue of whether the September 13 actions of the County Council conformed with earlier orders of this Court.

### vii. Summary of RHI's Applications for Water and Sewer Service Category Changes

To briefly summarize RHI's five proposals:

(1) 2003 Application – sought a water and sewer service category change from category 5 to category 4 for the 3.6 acres of Parcel 28 and all 10.04 acres of Parcel 11.  The development proposal included a *minimum floor area of 95,000 square feet* and expansion capacity for a future school.  The 2003 Application requested *one point of discharge for 15,000 gallons of water per day and one water withdrawal for 15,000 gallons per day*.

(2) 2004 Subdivision Application – sought to combine the front and rear parcels in order to build a three-story church building of *14,000 square feet on three stories* with parking around it on the front parcel.

(3) 2005 Application – sought a water and sewer category change from category 5 to category 4 for the 3.6 acres of Parcel 28 and all 10.04 acres of Parcel 11.  The development proposal included a three story church encompassing *42,000 square feet of floor area* and an expansion of that facility to include an elementary and middle school.

(4) 2008 Proposal in Support of a Damages Award – would require a water and sewer category change from category 5 to category 4 for the 3.6 acres of Parcel 28 in order to build a *27,000 square foot building with 285 parking spaces* all located on Parcel 28.

(5) 2010 Application – sought a water and sewer category change from category 5 to category 4 for the 3.6 acres of Parcel 28 and all 10.04 acres of Parcel 11.  The development plan included a *72,000 square foot sanctuary building*, which would include a future private school for 200 students and an *attached 12,000 square foot gymnasium* to accommodate an existing congregation of 900 individuals and future student enrollment of 200 for grades kindergarten through eight.  The main sanctuary building would contain two levels and a basement with a building footprint of 28,000 square feet.  The 2010 Application requested *one point of discharge for 7,000 gallons* of water per day and *one water withdrawal for 7,000 gallons of water* per day.

## II.     Analysis

The Fourth Circuit is highly deferential to a district court's decision on the meaning of its own order "because district courts are in the best position to interpret their own orders." *JTH Tax, Inc. v. H&R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004); *see In re Tomlin*, 105 F.3d 933, 941 (4th Cir. 1997) ("We have previously observed that we will defer to a district court's interpretation of its own order."); *Anderson v. Stephens*, 875 F.2d 76, 80, n.8 (4th Cir. 1989) ("We are, of course, mindful of the inherent deference due a district court when it construes its own order.").

In its supplemental memorandum addressing the Council's decision to partially grant and partially deny RHI's 2010 Application, the County argues that it has complied with the Court's 2008 Opinion.  The County claims that the "Court's ruling in total required Plaintiff to submit a water and sewer category change application that conformed with the plan presented at trial, which was a water and sewer service category change for the remainder of the front parcel." Doc. No. 201 at 10.  Furthermore, the County maintains that *res judicata* and collateral estoppel prevent RHI from applying for any water and sewer service category change that is the same request as the 2003 Application or the 2005 Application.  *Id.* at 10-11.  Finally, the County argues that judicial estoppel requires that RHI submit an application that is exactly the same as the 2008 Proposal.  *Id.* at 11.

RHI responds in its supplemental memorandum that the Council's reconsideration of its initial denial and then partial grant and partial denial of its 2010 Application confirm that the Council has violated the 2008 Order.  Doc. 197 at 1.  RHI maintains that "[t]he Council reconsideration demonstrates that Defendants acted with both delay and religious discrimination in manufacturing the reluctant approval of a different application (for only a portion of RHI's

property) rather than the application RHI submitted." *Id.* at 2. RHI suggests that the only reasons the Council granted a partial change was "to avoid a contempt finding while continuing to delay and prevent RHI's plans to build its church." *Id.* RHI argues that the resolution the Council adopted was not a request made by RHI, and the County's argument places it in a worse position than a new water-sewer change applicant. Doc. 203 at 2.

### a. The Court's 2008 Opinion

After a jury entered a verdict in RHI's favor, this Court, in its 2008 Opinion, denied the County's renewed motion for judgment as a matter of law and addressed damages. The Court found that: (1) sufficient evidence supported the jury's finding that the County's actions were motivated, at least in part, on the basis of religious discrimination in violation of the Equal Protection Clause of the United States Constitution; (2) sufficient evidence existed to support the jury's findings that the County's actions imposed a substantial burden on RHI's religious exercise in violation of RLUIPA; and (3) the County failed to offer a compelling interest for its denial of RHI's 2003 Application, 2005 Application, and for the enactment of CB-83-2003. *See Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 771-790. The Court also (1) entered judgment on the jury's verdict of $3,714,822.36, (2) enjoined the County from applying the provisions of CB-83-2003 to the property of RHI, and (3) directed the County to "process any water and sewer category change application that RHI may hereafter file without regard to the provisions of CB-83-2003 and without any discriminatory animus." *Id.* at 796; *see id.* at 790-96.

In determining whether RHI was entitled to injunctive relief, the Court addressed the threshold issues of waiver, standing, jurisdiction, abstention, *res judicata*, and collateral estoppel. *See id.* at 791-95. The Court found that none of these issues barred RHI's right to injunctive relief. *See id.* The County once again argues that *res judicata* and collateral estoppel prevent the

County from granting any water and sewer category change application that is the same request as either the 2003 Application or the 2005 Application.  Doc. No. 201 at 10-11.  The County is incorrect.

### b.  *Res Judicata* and Collateral Estoppel

*Res judicata*, or claim preclusion, "exists when: (1) the parties in the present litigation are the same or in privity with the parties of the earlier dispute, (2) the claim in the present action is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits."  *Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 794, n.22 (citing *Colandrea v. Wilde Lake*, 761 A.2d 899, 910 (Md. 2000)).   "Claim preclusion applies 'not only as to all matters decided in the original suit, but also as to matters that could have been litigated in the original suit.'"  *Id.* (quoting *Colandrea*, 761 A.2d at 910).   Under Maryland law, collateral estoppel "applies when: (1) the issue decided in the prior adjudication is identical to the issue in the present action, (2) there was a prior final judgment on the merits, and (3) the party against whom the decision is being used was a party in the prior action."  *Id.* at 794 n.23 (citing *O'Reilly v. Cnty. Bd. of Appeals*, 900 F.2d 789, 791 (4th Cir. 1990)).

The County maintains that the 2010 Application "is the same request made [by RHI] in its 2003 and 2005 applications."  Doc. No. 201 at 10.  The County argues that "[i]mplicit in the Court's ruling is that such an application is subject to *res judicata* and collateral estoppel."  *Id.* The County suggests that it "did not violate the [2008] Order when it preliminarily declined to approve Plaintiff's application that mirrored its prior applications because it was not 'new and different' as contemplated by the Court's" 2008 Opinion.  *Id.* at 10-11.  To support its position, the County cites to the 2008 Opinion in such a way that fundamentally undermines what the Opinion actually says in the hopes that this Court will find that the County's partial grant and

partial denial of RHI's 2010 Application followed this Court's directives.  The County's interpretation is fundamental flawed for two reasons.

First, the County suggests that *res judicata* and collateral estoppel apply because the denial of the 2003 and 2005 Applications were each ruled on by the Maryland state court system. This Court, however, has already found that the County "erroneously characterizes the nature of RHI's claims."  *Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 794.  It continues to do so now.

The 2008 Opinion held that "[t]he RHI attack is not on one administrative or legislative action in isolation, but rather *the effect of a pattern or series of actions* the discriminatory animus for which has now been established by the jury's special verdicts."  *Id.* (emphasis added).  In numerous places in the 2008 Opinion, this Court indicated that RHI's attack was not on a single denial of a water and sewer category change application, but rather on a pattern of actions that indicated the County's discriminatory animus.  *See, e.g.*, *id.* at 781 ("The Fourth Circuit has recognized several factors that are probative of whether a decision-making body was motivated by discriminatory intent, and they were included in the jury instructions: (1) the evidence of a 'consistent pattern' of actions by the decision-making body disparately impacting members of a particular class of persons . . . ."); *id.* at 793-94 ("The *Rooker-Feldman* doctrine does not apply to this case because RHI is not seeking to review state court judgments that upheld the denials of its [2003 and 2004 Applications]; rather, RHI alleges that Defendant has engaged in a pattern of discriminatory conduct such that those denials are merely one component of the pattern of challenged conduct (the other being the denial of its [2005 Application] and the passage of CB-83-2003.")).

Second, the County's citations to the 2008 Opinion take entirely out of context the significance of this Court's finding that RHI's Applications were different and unique from each

other.  The County misrepresents the Court's observation in 2008 that it is "plain that RHI [is] entitled to 'relief on a new application because the claims and/or issues resolved in the prior state cases are not 'identical' to the application that it seeks to file' . . . . ."  Doc. No. 201 at 9 (quoting *Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 794) (emphasis omitted).  The County's ellipsis could not have been accidental.  The clause that follows after the semicolon *of the same sentence* explains why RHI's applications have been different.  The sentence, read in its entirety, indicates that the Court found that

> Simply put, *res judicata* and collateral estoppel cannot apply to bar RHI's relief on a new application because the claims and/or issues resolved in the prior state cases are not "identical" to the application that it seeks to file; *the size of the church's footprint, the parking, the percentage of lot coverage, the required extension of the sewer line and the water hook-up are all different from the specifications of RHI's developments submitted in conjunction with prior applications.*

*Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 794 (emphasis added).

As discussed above, the size of the church's footprint, the number of parking spaces, the proposed percentage of lot coverage, and the required extension of the sewer line and water hook-up have changed in each application.  *See supra* at 5-11.  Indeed, as RHI indicated in its supplemental briefing, the specifications of RHI's developments submitted in conjunction with prior applications have adapted "for a variety of reasons, including the needs of the RHI congregation, its finances, its understanding of future development approvals needed, and even the County's own land use development rules."  Doc. No. 203 at 4.

To reiterate, the 2003 Application, 2004 Subdivision Application, 2005 Application, 2008 Proposal, and now the 2010 Application are not barred by *res judicata* or collateral estoppel for two reasons.  First, RHI's claim of religious discrimination was not based on a single denial of a water and sewer category change application, but rather on a pattern of actions

that began with the denial of the 2003 Application and allegedly continues to this day with the partial grant and partial denial of the 2010 Application.  Second, RHI's Applications are not identical because "the size of the church's footprint, the parking, the percentage of lot coverage, the required extension of the sewer line and the water hook-up are all different from the specifications of RHI's developments submitted in conjunction with prior applications." *Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 794.

### c.   Judicial Estoppel Does Not Apply

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation.  The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *John S. Clark Co. v. Faggert & Frieden*, 65 F.3d 26, 28-29 (4th Cir. 1995) (quotation omitted). Judicial estoppel is applied when three factors are satisfied: (1) "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation;" (2) "the prior inconsistent position must have been accepted by the court;" and (3) "the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (quotation omitted).  "This bad faith requirement is the determinative factor." *Id.* (quotation omitted).

The County maintains that RHI knowingly "convinced the Court" in 2008 that it needed a water and sewer service category change only for the remaining portion of Parcel 28 to practice its religion freely.  Doc. No. 201 at 14.  RHI's later filing in 2010 of an application for both the

remainder of Parcel 28 and all of Parcel 11, according to the County, demonstrates bad faith.[4] *Id.* RHI maintains that the Court ordered the County to grant any future water and sewer service category change filed by RHI and that the County fails to demonstrate bad faith. Doc. No. 203 at 1-3.

Here, judicial estoppel is inapplicable because RHI has not "intentionally misled the court to gain an unfair advantage." *Zinkand*, 478 F.3d at 638. RHI's actions demonstrate that it faithfully followed the 2008 Order and applied for a water and sewer service category change "without reference to the provisions of CB-83-2003" and sought its consideration by the County "without delay or religious discrimination." Doc. No. 119 at 2. This Court knows when it has been misled; in this instance it certainly was not.

Additionally, as discussed above, the 2008 Proposal "was a 'rough sketch' based on that point in time, for the purpose of providing an example to assist with the calculation of delay damages." Doc. No. 203 at 6. RHI points out that while elements of the water-sewer upgrade it now seeks have some similarity to its 2003, 2005, and 2008 Applications, RHI's building plan has adapted for a growing congregation. *Id.* at 5-6. Indeed, rather than adopting inconsistent positions, RHI has maintained one very consistent position: the County intentionally discriminated against it by denying each and every water and sewer service application.

---

[4] The County's argument that its actions strictly follow the 2008 Order is disingenuous at best. Before the Fourth Circuit, the County maintained that the 2008 Order "directing the County to consider any future application without discrimination has essentially the same effect as ordering the County to grant whatever application RHI might choose to submit, including a renewal of the 2003 Application." Appellant's Opening Br. at 73. The County also argued that "the injunctive relief ordered by [this Court] against the County effectively requires the County to grant any W&S Category Change application RHI might choose to submit." Appellant's Reply Br. at 22. The County's prior expansive interpretation has now narrowed to the point of absurdity.

**d. The County's Reasons for its Initial Denial of RHI's 2010 Application are Similar to the Reasons Found by This Court and the Jury to be Motivated by Discriminatory Animus**

The reasons given by the County for its initial denial of RHI's 2010 Application closely mirror the reasons previously given for all of its actions at issue in the 2008 trial which were rejected by the jury's verdict and this Court's order. On June 23, 2011, Councilwoman Lehman read a memorandum to the Transportation, Housing, and Environment Committee of the County Council that stated reasons why she believed the County Council should deny RHI's 2010 Application. She maintained that (1) the property was located in an environmentally sensitive area, (2) the proposed building would threaten water quality and quantity, and (3) the church property would not allow the County to maintain the character of the neighborhood. *See* Doc. No. 165 Ex. 2. The reasons are a veritable carbon copy of those relied upon by the County at every level of these proceedings.

This Court previously found that these reasons for denying RHI's applications were motivated in part by discriminatory animus. *See Reaching Hearts Int'l, Inc.*, 584 F. Supp. 2d at 774-79; *id.* at 787-90. Specifically, the Court found that the County "did not adduce *any* evidence at trial that demonstrated that an approval of any of RHI's applications would have *any* impact—much less a negative impact—on Rocky Gorge Reservoir. Defendant did not produce any data, studies, or reports on this issue." *Id.* at 788. The Court also found that the County did not carry

> its burden in demonstrating how the impact on [the Reservoir] would be of a different kind and/or degree than the impact on the Reservoir from the surrounding large-lot residential developments or from Dugan's Estates, which had its water and sewer category change application approved despite the fact that it was traversed by a stream that ran off directly into reservoir.

*Id.*  Finally, the Court found that all of the governmental agencies that initially recommended or did not object to RHI's applications lent "further support to the notion that the governmental bodies charged with and familiar with the County's environmental policies did not perceive any negative environmentally-based reasons upon which to deny RHI's applications." *Id.*  The Court believed that this fact "support[ed] the inference that Defendant's proffered reasons [were] pretextual." *Id.*

Councilwoman Lehman's memorandum *advanced the same environmental concerns rejected by the jury* that heard this case, and again *rejected by this Court* in its 2008 Opinion. After reading her memorandum, Councilwoman Lehman made a motion to retain the property in water-sewer category 5, which was immediately seconded and approved by all committee members.  On July 12, 2011, the Council held a meeting at which it considered CR-21-2011. Doc. No. 165 at 4.  At this meeting, Councilwoman Lehman moved to substitute Draft 2 for Draft 1 of the resolution, which provided for approval of RHI's application that previously had been submitted by the County Executive.  *Id.*  Draft 2 recommended retaining RHI's property in water-sewer category 5.  *Id.* at 6.  The Council unanimously voted in favor of the adopting the substituted draft of the resolution, thereby denying RHI's application for a water and sewer service category change.[5]  *Id.*

### e.  Summary of the 2008 Opinion and Order

To the extent that the County still perceives any ambiguity regarding this Court's 2008 Opinion, this Opinion should eliminate any possible misunderstanding.  Any reading of the 2008 Opinion that would limit RHI's future water and sewer service category applications to the 2008

---

[5] Amicus curiae's argument that the County properly denied the 2010 Application in light of the 2008 Plan is unpersuasive because the actions taken by Councilwoman Lehman demonstrate that she was not considering the 2008 Plan when she read from her memorandum and moved to substitute Draft 2 for Draft 1.  Instead, she relied on the *same arguments* that the jury and this Court have explicitly rejected.

Proposal proffered by RHI at trial is hopelessly misguided.  This Court and jury were not misled, but rather informed of the basis for RHI's damages claim.

RHI's 2010 Application also is not precluded by the Maryland state cases for two reasons: (1) RHI's claim of religious discrimination is not based on a single act in isolation, but rather a pattern of actions that began with the County's denial of RHI's 2003 Application and continued through trial and arguably continues to this date and (2) RHI's Applications are all different and unique from each other based on the varying specifications of RHI's developments submitted in conjunction with each application.

Once again, this Court's 2008 Opinion and Order are not meant to be read as the County reads them.  When this Court in 2008 ordered the County to "process any water and sewer category change application thereafter filed by the Plaintiff without reference to the provisions of CB-83-2003 and without delay or religious discrimination," it chose its words carefully.  It did not, as the County expansively argued in the Fourth Circuit, order the County to approve whatever application RHI might file, and without regard to its content.  On the other hand, as the County now narrowly argues, it did not order the County to approve only the 2008 proposal advanced by RHI at trial in support of its claim for damages.  Indeed, it did not order the approval of any specific application, but rather the processing of any application, taking into account the obvious fact that there was not then any pending application and that circumstances may very well change between the time of a court's decision and the filing of an application.

Thus, the most recent action of the County Council proceeded on multiple errors of law concerning this Court's 2008 Opinion.  The 2008 Opinion did not mandate only processing of an application similar to that presented at the 2008 trial, nor is RHI bound by *res judicata* or

collateral estoppel principles from filing an application that had some of the elements of the earlier applications denied by the County.

### III.      Preliminary Observations Concerning Continued Religious Animus

The actions of the County Council in this case appear to be the product of both structure and tradition.  The County Council is elected by individual councilmember-districts as a matter of the County's structure of government, and, by longstanding tradition, land use decisions in an individual councilmember's district are largely the province of the councilmember serving that district.  Rarely do the remaining councilmembers go against the wishes of that individual councilmember on local land use matters out of understandable concern that the same deference might not be returned in the future.

Here, the earlier battles against RHI were led by Councilmember Dernoga, a past president of the West Laurel Civic Association.  In the recent election, Councilmember Dernoga was replaced by Councilmember Lehman, also a past president of the West Laurel Civic Association, and whose campaign was run by former Councilmember Dernoga's son.  From preliminary information developed to date, it is clear that West Laurel Civic Association, both in the past and at the present, believes that "another church is about the last thing we need."  Doc. No. 203, Ex. 5.

The members of the Prince George's County Council need to step back and ponder what structure and tradition have brought them in this case, and what it may produce for them in the future.  The prior decisions of the County Council have already cost the county $3.7 million dollars plus interest, which has now been paid, and another $872,122.17 in legal fees and expenses which, by any measure, is a fairly high price to pay in a period of economic distress.

At this juncture, and without the completion of discovery, it is not possible to determine whether an additional award of damages should be made against the County for its recent actions.

What is plain, however, is that the September 13, 2011, decision of the County Council was premised upon two fundamental errors of law relating to the interpretations of an order of this Court. Because of that, this Court will enter an order vacating that portion of the September decision that denied a portion of RHI's 2010 application, remand this matter to the County Council with directions to reconsider *promptly* its partial denial and process the application without delay or religious discrimination and in conformity with this Opinion as well as the 2008 Opinion of this Court.

In doing so, the principles of *res judicata* preclude the County from relying upon the identical environmental concerns found utterly wanting by a jury and by this Court in 2008. To the extent, if any, that the County's good faith processing of the application raises any environmental concerns, they must be of an entirely different character and nature than those previously found wanting by this Court after a jury trial. Déjà vu simply will not do.

The Court is cautiously optimistic that the County Council will, at last, give fair consideration to RHI's application and bring this matter to an end. However, should it, upon court ordered reconsideration, again deny the application, the Court will permit discovery to be completed and a trial to be held on the question of whether the 2011 actions of the County constitute a continuation of the discrimination that resulted in a multi-million dollar verdict against the County, including consideration of additional damages, legal fees, and costs.

## IV.    Conclusion

For the reasons stated above, the Court concludes that the County's decision to partially deny RHI's 2010 Application did not comply with this Court's 2008 Opinion and Order and was

premised on fundamental errors of law.  Accordingly, the Court will, by separate order, vacate

that portion of the County's September 2011 action denying a portion of RHI's application and

direct that the County forthwith, and without delay or religious discrimination, process the

remainder of the application in accordance with this Opinion and Order.  This Court will retain

jurisdiction pending further action of the County Council, which the Court will direct take place

no later than sixty days from the date of this Order.   In the event that the County, upon

court-ordered reconsideration, approves the balance of the application, this case will be

concluded, subject, however, to the right of RHI to file a petition for any additional damages and

for an award of attorney's fees.   In the event that the County again denies the balance of the

application, discovery will be allowed to be completed and this Court will set the matter for a

further trial on the questions of injunctive relief and damages, together with attorney's fees.

A separate order follows.


<u>December 21, 2011</u>                    _____/s/_____
Date                                           Roger W. Titus
                                               United States District Judge